**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**ANTOINE MICKLE**

      **Plaintiff,**

**vs.**

                                     **Case No.:**

**RIVER POINT COMMUNITY
ASSOCIATION, INC., RIVER CITY
MANAGEMENT SERVICES, INC.,
SHANTELL HUGHES, AND SHARLEEN
THOMPSON-MESSINESE**

      **Defendants.**

_____

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

COMES NOW the Plaintiff, ANTOINE MICKLE and sues the Defendants, RIVER POINT COMMUNITY ASSOCIATION, INC., RIVER CITY MANAGEMENT SERVICES, INC., SHANTELL HUGHES and SHARLEEN THOMPSON-MESSINESE and states and alleges as follows:

**PARTIES**

1.    ANTIONE MICKLE ("MICKLE") was, at all times relevant to the events described herein, a resident and citizen of Duval County, Florida, *sui juris*, and an African-American man.

2.    RIVER POINT COMMUNITY ASSOCIATION, INC. ("RIVER POINT" or "Association") is a Florida not-for-profit corporation with its principal place of business in Duval County, Florida.

3.    SHANTELL HUGHES ("HUGHES") was at all times relevant to the events described herein a resident and citizen of Duval County, Florida, *sui juris*, and the president

and/or agent of RIVER POINT and was acting within the scope of her employment with regard to managing the operations of the Association.

4.      RIVER CITY MANAGEMENT SERVICES, INC. (the "RIVER CITY") is a Florida Corporation with its principal place of business in Duval County, Florida.

5.      SHARLEEN THOMPSON-MESSINESE ("THOMPSON-MESSINESE") was at all times relevant to the events described herein a resident and citizen of Duval County, Florida, *sui juris*, and the property manager of RIVER POINT and an employee of RIVER CITY, and was acting within the scope of her employment with regard to managing the operations of the Association

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because they arise under the Civil Rights Act of 1866, 42 U.S.C. § 1981 and § 1982 and the Federal Fair Housing Act, 42 U.S.C. § 3604.

7.      The events giving rise to the claims alleged in this Complaint arose within Jacksonville, Florida which is within the Middle District of Florida. 28 U.S.C. § 89(b).  Venue in this Court is therefore proper pursuant to 28 U.S.C. § 1441(a).

8.      All conditions precedent to the bringing of this action by MICKLE have occurred, or their performance has been waived by Defendants.

GENERAL ALLEGATIONS

9.      At all times material hereto, MICKLE, is a member of a protected class under the Federal Fair Housing Act by virtue of his race – African American, and color - Black.

10.      At all times material hereto, THOMPSON-MESSINESE was licensed, pursuant to Fla. Stat. § 468.431, et seq., as Community Association Manager for RIVER POINT.

*Mickle v. River Point Community Assoc., et al*
*Complaint*

11.     As the Community Association Manager for RIVER POINT and as a licensed Real Estate Broker, THOMPSON-MESSINESE received specialized training as to the requirements and governing regulations associated with the Fair Housing Act.

12.     At all times material hereto, Defendants were in the business of maintaining and operating the single-family homes which comprise RIVER POINT, and enforcing the declarations, covenants, rules, and regulations of RIVER POINT.

13.     Since 2002, MICKLE has owned a single-family home located on Raleigh Ridge Drive in Jacksonville Florida and within the RIVER POINT Association

14.     In October 2020, there are many different flags and signs that abound within the RIVER POINT neighborhood.  This includes

    a.   College themed sports flags

 

    b.   Blue Lives Matter Flags

*Mickle v. River Point Community Assoc., et al*
*Complaint*



c.  Seasonal Flags



d.  LGBTQ Right Flags



e.  Trump Flags

*Mickle v. River Point Community Assoc., et al*
*Complaint*

 

f.  Trump Political signs and stickers



g.  Blue Lives Matter AND a Trump Flag



h.  Unknown types of political statements

*Mickle v. River Point Community Assoc., et al*
*Complaint*



15.    On or about October 16, 2020, MICKLE hung a Black Lives Matter flag in front of his home.



16.     Despite the plethora of different signs and flags in the neighborhood, on October 20, 2020, MICKLE received a letter and an email from THOMPSON-MESSINESE on behalf of Board of Directors of the River Point Community Association, Inc. advising him that his flag was in violation of the sign and nuisance clauses of the Declaration of Covenants.  See Exhibit "A" attached hereto.

17.    The letter further spelled out what the sign and nuisance clauses include:

**J. Signs.** A sign denoting the street address of the residence located and designed in accordance with approved standards, shall be required on each dwelling unit. In addition, one small sign may be used to denote the name

of the resident, subject to the prior written approval of the Developer or Association with regard to size, shape, design, color and location of such sign. <u>No other signs of any kind shall be displayed to the public view on any lot,</u> however, that nothing herein shall be construed to restrict in any manner the Developer of its agents from placing sign advertising on the Property or any portion thereof.

> A. **Nuisances:** No noxious or offensive activities shall be carried on upon any portion of the Property; nor shall anything be done thereon which is or may become a nuisance or annoyance to any resident of the Unit.

18.    The notices continue and state exemptions to signs that are not considered noxious, offensive, a nuisance, or an annoyance, such as the "United States of America flag, the State of Florida flag, 'For Sale' and 'For Rent' signs, holiday and season flags, though they are limited to their season or holiday, and political signs which are limited to their 'election time'"

19.    RIVER POINT demanded that MICKE remove his "Black Lives Matter Flag" within 24 hours of receiving the notice, "so that additional action is not necessitated."

20.    On the day of receipt of the letter from the Defendants, MICKLE left a message with HUGHES stating that he would not remove his Black Lives Matter flag.

21.    The Defendants have not sent violation letters to the other homes that fly flags or post signage with other political or awareness signs or flags claiming that their signs or statements are a nuisance or otherwise in violation of the sign rule.

22.    Moreover, Defendants demonstrated a discriminatory animus towards MICKLE on the basis of his race and color, and his association to persons based on his race and color by enforcing the rules and regulations to "Black Lives Matter" flags, and not signs or banners that support other issues, such as "Blue Lives Matter," "Trump Train," LBGTQ+ rights, Prisoner of War,  or non-political speech banners which support college sports teams.

23.     Subjecting a resident to harassment and demands that they cease visible support for "Black Lives Matter" solely based upon the disagreement with that position not only shows animus, but also subjects MICKLE to harassment because of his race and color and imposes different terms and conditions on his use of his dwelling.

24.     Defendants further sought to intimidate MICKLE by threatening him with further action by the association if he chose not to remove the flag within 24 hours.

25.     As a result of the actions of Defendants, MICKLE has suffered mental anguish, grievous emotional distress, embarrassment, shame, worry, frustration, humiliation, and loss of capacity for the enjoyment of life.  These losses are either permanent or continuing and MICKLE will suffer these losses in the future.

26.     MICKLE has employed his undersigned attorneys and has agreed to pay them a reasonable fee for their services herein.

## COUNT I – VIOLATION OF 42 U.S.C. § 3604(b)
## AGAINST DEFENDANTS

27.     MICKLE hereby reasserts by reference in this Count I the allegations of Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28.     At all times material HUGHES and THOMPSON-MESSINESE was substantially involved in all discriminatory actions against the MICKLE and were in the scope of their agency with their principals, RIVER POINT and RIVER CITY that ratified all discriminatory actions.

29.     The acts Defendants, as set forth herein, constitute violations of the fair housing rights of MICKLE by discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of race and color.

*Mickle v. River Point Community Assoc., et al*
*Complaint*

30.    As a direct and proximate result of the aforementioned acts and omissions of Defendants, MICKLE has suffered irreparable loss and injury including, but not limited to mental anguish, grievous emotional distress, embarrassment, shame, worry, frustration, humiliation, and loss of capacity for the enjoyment of life.  These losses are either permanent or continuing and MICKLE will suffer these losses in the future.

31.    Moreover, the aforementioned acts s of Defendants were so reckless or wanting in care that it constituted a conscious disregard or indifference to the protected rights of MICKLE who was exposed to such conduct.

WHEREFORE,   Plaintiff ANTOINE MICKLE demands judgment against the a Defendants, RIVER POINT COMMUNITY ASSOCIATION, INC., RIVER CITY MANAGEMENT SERVICES, INC., SHANTELL HUGHES and SHARLEEN THOMPSON-MESSINESE that the Court declare that the actions of the Defendants violated the Fair Housing Act by discriminating against MICKLE because of his race and color, enjoin Defendants from enforcing the rules and regulations against his "Black Lives Matter" flag, award appropriate compensatory and punitive damages to MICKLE against Defendants to compensate him for his humiliation, embarrassment and emotional distress caused by Defendants' discriminatory actions; reasonable costs and attorneys' fees; and  any and all other relief that may be necessary and appropriate.

## COUNT II – VIOLATION OF 42 U.S.C. § 1982 AGAINST DEFENDANTS

32.    MICKLE hereby reasserts by reference in this Count III the allegations of Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

33.     Pursuant to 42 U.S.C. § 1982, this is a claim against Defendants for their deprivation of MICKLE's right to hold property to the same extent as white citizens of the United States.

34.     As a result of the discriminatory acts and omissions described hereinabove, the Defendants have denied MICKLE's right to hold property to the same extent as white citizens because of his race.

35.     Defendants' deprivation of MICKLE's rights because of his race is illegal and morally reprehensible.

36.     As a direct and proximate result of the aforementioned acts and omissions of Defendants, MICKLE has suffered mental anguish, grievous emotional distress, embarrassment, shame, worry, frustration, humiliation, and loss of capacity for the enjoyment of life.  These losses are either permanent or continuing and MICKLE will suffer these losses in the future.

37.     Moreover, the aforementioned acts and omissions of Defendants were so reckless or wanting in care that it constituted a conscious disregard or indifference to the protected rights of MICKLE who was exposed to such conduct.

WHEREFORE,   Plaintiff ANTOINE MICKLE demands judgment against the a Defendants, RIVER POINT COMMUNITY ASSOCIATION, INC., RIVER CITY MANAGEMENT SERVICES, INC., SHANTELL HUGHES and SHARLEEN THOMPSON-MESSINESE that the Court declare that the actions of the Defendants violated MICKLE's civil rights because of his race and color, enjoin Defendants from enforcing the rules and regulations against his "Black Lives Matter" flag, award appropriate compensatory and punitive damages to MICKLE against Defendants to compensate him for his humiliation, embarrassment and

*Mickle v. River Point Community Assoc., et al*
*Complaint*

emotional distress caused by Defendants' discriminatory actions; reasonable costs and attorneys'

fees; and  any and all other relief that may be necessary and appropriate.

Respectfully Submitted on this 23rd day of November, 2020.

By: */s/ Benjamin L. Crump*
Benjamin L. Crump, Esq.
Fla. Bar No.:  72583
Ben Crump Law, PLLC.
122 S. Calhoun Street.
Tallahassee, FL  32301
Office: 800-938-1111
Court@bencrump.com
Ben@bencrump.com

By: */s/ Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No.: 0084905
DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Phone (305) 669-2822
Facsimile (305) 442-4181
mdietz@justdigit.org
aa@justdigit.org

By: */s/ David Cronin*
David Cronin, Esq.
FL Bar Number: 0185401
PO BOX 7733
Jacksonville, FL 32238
Telephone: (904) 239-6047
david@davidscroninpa.com


*Attorneys for Plaintiff*